UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR A. AVILA, | Case No. 2:23-cv-09598-SB-AS |
| Plaintiff, | |
| v. | ORDER DENYING MOTION TO REMAND [DKT. NO. 14] |
| NORTHWOOD HOSPITALITY LLC, | |
| Defendant. | |

Plaintiff Hector Avila filed this putative class action against his employer, Defendant Northwood Hospitality, LLC, for various wage and hour violations. The alleged violations are based in substantial part on Defendant's policy requiring all employees to keep their employer-issued walkie talkies on at all times during their shifts, including during meal and rest breaks. Defendant removed the case under the Class Action Fairness Act (CAFA), contending that the amount in controversy exceeded $5 million. Plaintiff now moves to remand, arguing that Defendant's calculations are based on unreasonable assumptions. Because the allegations in the complaint allege universal violations for which the amount in controversy exceeds the jurisdictional threshold, the Court DENIES the motion to remand.

I.

Plaintiff is a current employee of Defendant, where he has worked for almost 14 years. Dkt. No. 1-1 ¶ 4. Plaintiff brought this class action based on two of Defendant's policies that Plaintiff claims caused it to violate California labor laws. The first policy, allegedly in place from March 2020 through the summer of 2021, required employees to wait in line to undergo unpaid security checks of their bags and hats before starting their shifts. *Id.* ¶ 15. The second policy, allegedly still in place, requires all putative class members to keep employer-provided

1

walkie talkies on (and be available for work) at all times, including during statutorily mandated rest periods and off-the-clock meal breaks. *Id.* ¶¶ 15, 20, 26, 31, 44, 54, 62, 70. Plaintiff brought claims for violations of California labor laws governing minimum wage, overtime, meal and rest break periods, wage statements, and timely payment upon termination ("waiting time"), along with a claim for unfair business practices.

Plaintiff filed his complaint in state court on September 18, 2023. Defendant accepted service on October 11 and removed on November 13. Plaintiff now moves to remand, alleging that Defendant failed to meet the amount-in-controversy requirement under CAFA by basing its calculations on unreasonable and unsupported assumptions. The Court heard argument on the motion on February 2, 2024.

## II.

CAFA generally establishes federal jurisdiction over class actions in which the amount in controversy exceeds $5 million and any member of the class is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2). A party removing a case under CAFA bears the burden to demonstrate federal jurisdiction. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Because Congress enacted CAFA to facilitate adjudication of certain class actions in federal court, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). CAFA requires a removing defendant to provide a "short and plain statement of the grounds for removal." *Id.* at 87; 28 U.S.C. § 1446(a). The notice of removal "need include only a plausible allegation that the amount-in-controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. When a defendant's allegations are challenged in a motion to remand, the defendant must show by a preponderance of the evidence that the amount in controversy exceeds CAFA's $5 million threshold. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). In making this showing, Defendant may rely on reasonable assumptions. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019). "[T]hose assumptions cannot be pulled from thin air but need some reasonable ground underlying them," and the removing party "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions." *Ibarra*, 775 F.3d at 1199. Where a defendant "relie[s] on a reasonable chain of logic and present[s] sufficient evidence to establish that the amount in controversy exceeds $5 million," it has met its burden of proof. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).

2

III.

The Court first addresses the parties' dispute over whether an antiremoval presumption applies, before turning to the assumptions underlying the calculation of the total amount in controversy.

A.

As a threshold matter, Plaintiff's briefing fails to acknowledge controlling Ninth Circuit and Supreme Court authority repudiating any presumption against removal in the CAFA context. Plainly, "no antiremoval presumption attends cases invoking CAFA . . . ." *Dart Cherokee*, 574 U.S. at 89. The Ninth Circuit, perceiving that "some remnants of our former antiremoval presumption seem to persist" post-*Dart Cherokee*, reiterated the Supreme Court's pronouncement in 2019 and again in 2022. *Arias*, 936 F.3d at 922; *see Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (reversing CAFA remand where district court applied antiremoval presumption).

In this case, Plaintiff titled an entire section of his motion, "The Ninth Circuit has a strong presumption against removal," in which he states head-on: "This strong presumption against removal jurisdiction equally applies to removal under CAFA." Dkt. No. 14-1 at 4 (citing a district court case predating *Dart Cherokee* by more than nine years). After Defendant pointed out the correct standard in its opposition by quoting a recent order from this Court that cites controlling case law, Dkt. No. 24 at 7 (quoting *McGrath v. All Med. Pers., Inc.*, No. 2:23-CV-05181-SB, 2023 WL 5507175 at *2 (C.D. Cal. Aug. 25, 2023) (Blumenfeld, J.) (quoting *Dart Cherokee*)), Plaintiff doubled down, stating:

> Defendant's Opposition, while long on rhetoric, is short on substance. As asserted in Plaintiff's Motion for Remand, it is well-settled that the Ninth Circuit has a strong presumption against removal . . . .

> Defendant fails to refute the Ninth Circuit[']s strong presumption against removal[.] A defendant removing a case from state to federal court under CAFA faces a strong presumption against removal. [citation to two cases predating *Dart Cherokee* by 8 and 9 years omitted]. Although Defendant asserts that the presumption does not exist, Courts continue to hold that defendants seeking removal under CAFA face a strong presumption against removal.

3

Dkt. No. 25 at 3.[1]

Plaintiff's repeated misstatement of the law is concerning. The Court raised this concern in its tentative order and directed Plaintiff's counsel to be prepared to address it at the motion hearing. The Court is satisfied that the misstatement was the product of neglect rather than intent, and counsel represented that she understood the mistake and would work diligently to avoid such errors in the future. Counsel is cautioned to exercise greater care to conduct proper legal research and read relevant authority in the future.

Having clarified that there is no antiremoval presumption in the CAFA context, the Court turns to the challenged calculation of the amount in controversy.

### B.

Aside from his incorrect reliance on the presumption against removal jurisdiction, Plaintiff's primary argument is that Defendant's amount-in-controversy calculation is not supported by reasonable assumptions.

In its notice of removal, Defendant calculated the amount in controversy to be $8,934,816. This calculation comprises the following: (1) $1,468,800 for minimum wage violations; (2) $2,436,984 for meal period violations; (3) $2,436,984 for rest period violations; (4) $403,700 for wage statement violations;

---

[1] Plaintiff's counsel cite a district court case that applied the incorrect standard. Dkt. No. 25 at 2 (citing *Guijarro v. Healthcare Servs. Grp., Inc.*, No. 20-CV-00324-VAP, 2020 WL 1983872 (C.D. Cal. Apr. 24, 2020)). But she ignores the decision by this Court, cited in the opposition, applying the correct standard. Dkt. No. 24, at 7 (citing *McGrath v. All Med. Pers., Inc*, No. 23-CV-05181-SB, 2023 WL 5507175 (C.D. Cal. Aug. 25, 2023). She also overlooked Ninth Circuit case law emphasizing the absence of any presumption against CAFA removal jurisdiction. *See Arias*, 936 F.3d at 922 (reaffirming that there is no antiremoval presumption in CAFA cases despite the fact that "some remnants of our former antiremoval presumption seem to persist"); *Jauregui*, 28 F.4th at 992 (noting that "the district court [incorrectly] imposed . . . a presumption *against* CAFA's jurisdiction"); *Moe v. GEICO Indem. Co.*, 73 F.4th 757, 762 (9th Cir. 2023) (noting that "no antiremoval presumption attends cases invoking CAFA") (cleaned up)).

(5) $401,385 in waiting time penalties; and (6) $1,786,963 in attorney's fees (equivalent to 25% of the common fund).

In support of this calculation, Defendant submitted two declarations from Tricia Price, its Senior Vice President in charge of Defendant's Human Resources. In the first, Price states that, based on her review of the company's records, Defendant employed 244 nonexempt employees in California during the class period, and that those employees worked in excess of 24,480 workweeks in that period for an average hourly wage of $19.91 per hour. In the second, Price states that Defendant typically hires employees to work a full-time schedule of 30–40 hours per week, generally consisting of up to five weekly shifts, each lasting 6–8 hours. Price's review of Plaintiff's own records reflects that he falls within this range, as he worked an average of 4.3 shifts per week with an average of 7.3 hours per shift.

Relying on these figures and the walkie-talkie requirement alleged in the complaint, Defendant calculates the amount in controversy for the meal and rest break violations to be the largest of all the claims.[2] Allegations in the complaint are the "first source of reference in determining the amount in controversy." *LaCross*, 775 F.3d at 1202. Where a complaint alleges a universal violation, the consequences of that violation inform the amount in controversy. *Id.* The complaint in this case alleges that Defendant "requir[ed]" employees to keep their walkie-talkies on "at all times," including during meal and rest breaks, pursuant to a company "polic[y]." Dkt. No. 1-1 ¶¶ 15, 20; *see also id.* ¶¶ 26, 31, 44, 54, 62, 70. This alleges a universal violation that applies to every putative class member for every meal and rest break.

Plaintiff argues that "'a "pattern and practice" of doing something does not necessarily mean *always* doing something.'" Dkt. No. 14-1 at 8 (quoting *Ibarra*, 775 F.3d at 1198). But as the Ninth Circuit has recognized, there is an "important distinction" between alleging a "pattern and practice" of violations and alleging a "universal" violation. *LaCross*, 775 F.3d at 1202; *accord Branch v. PM Realty Grp., L.P.*, 647 F. App'x 743, 746 (9th Cir. 2016) (holding defendant's meal and rest break assumptions were reasonable because the complaint alleged a policy "uniformly" depriving class members of breaks). Here, Plaintiff alleges a practice

---

[2] The parties dispute whether Defendant's calculation of the wage and overtime claim, which includes an assumption of thirty minutes per shift of unpaid wages, is adequately supported. The Court need not reach the issue, however, in light of its analysis of the amount in controversy on the meal, rest, and waiting time claims.

that would result in a universal violation if the violation as asserted is ultimately proven.

Plaintiff seeks a statutory penalty equivalent to one hour of pay for each day worked with a noncompliant meal or rest break. All that remains for Defendant to establish is the number of workdays with noncompliant meal and rest breaks. The second Price declaration states that employees work four-to-five weekly shifts, each lasting more than five hours, entitling them to both a meal break and a rest break for each shift. Dkt. No. 1-1 ¶¶ 24, 25, 29, 30. Based on Defendant's declarations and the allegations in the complaint, the Court finds it reasonable to assume that each putative class member suffered four weekly violations of the law requiring meal and rest breaks.[3] Multiplying the number of shifts per week (4) by the total number of workweeks (24,480) by the average hourly wage ($19.19) equates to $1,949,587.20 for the meal period claim and $1,949,587.20 for the rest period claim—for a total of $3,899,174.40 (for these two claims).

Defendant's calculation of waiting time penalties is likewise supported by the allegations in the complaint. Under California Labor Code § 203, an employer owes waiting time penalties when it fails to pay an employee immediately upon termination (or, in certain circumstances, within 72 hours thereof). Cal. Lab. Code § 203. For every day the employer fails to pay, it owes the employee one day of that employee's regular wages. *Id.* The penalty is capped at 30 days. *Id.* "Wages" in § 203 includes money the employer owed the employee at the time of termination for missed meal and rest breaks, unpaid overtime, and underpayment of minimum wage. *Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 102, 109, 117 (2022).

The "very nature" of a wage-and-hour class action "requires [a p]laintiff to allege that putative class members have not received all wages owed in violation of the law." *Ramos v. Schenker, Inc.*, No. 5:18-CV-01551-JLS, 2018 WL 5779978, at *2 (C.D. Cal. Nov. 1, 2018). Every class member, by virtue of being a member of the class, allegedly has not received, and is necessarily owed, outstanding wages. *Gomez v. Metro Air Serv. Inc.*, No. 2:22-CV-04979-SP, 2023 WL 1822373, at *5 (C.D. Cal. Feb. 7, 2023). And every member of the subclass of terminated employees was necessarily owed money at termination and is consequently eligible for waiting time penalties. *Id.*; *see also Ramos*, 2018 WL 5779978 at *2 ("[A]llegations of unpaid wages are implicit allegations of

---

[3] Defendant assumed five days of noncompliant meal and rest breaks in its notice of removal but assumed four in its opposition.

maximum damages for waiting time penalties."). Since the lawsuit alleges violations that remain unremedied at the time of filing, a class member terminated more than 30 days before the filing of a lawsuit is entitled to the full 30-day penalty. *See Jauregui*, 28 F.4th at 994 (finding assumption that all class members were entitled to full 30-days of waiting time penalties reasonable "even if a very small percentage of employees might possibly not be entitled to the maximum penalty").

Here, Plaintiff alleges claims for unpaid minimum wages, unpaid overtime, and unpaid meal and rest breaks. Each of these claims qualifies as "wages" under *Naranjo* and entitles class members to waiting time penalties. The complaint defines the waiting time class as all current and former employees "who did not receive payment of all unpaid wages upon separation of employment" within the three-year statutory time period. Defendant identifies 84 employees who have separated from their employment with Defendant since September 18, 2020. As in *Jauregui*, it is reasonable to assume that all 84 of these employees are entitled to the full 30-day penalty. Multiplying the number of terminated employees (84) by the average hourly wage ($19.91) by the hours in a full workday (8) and by the maximum days contemplated as a penalty (30) yields a total of $401,385.60 in controversy on this claim.

\* \* \*

At this point, the Court can stop. Adding the amounts in controversy for the claims calculated thus far—meal period violations ($1,949,587.20), rest period violations ($1,949,587.20), and waiting time penalties ($401,385.60)—yields a subtotal of $4,300,560. Adding 25% of this subtotal ($1,075,140) for attorney's fees, as Defendant did in its calculation and which Plaintiff does not challenge, yields an amount in controversy of $5,375,700.[4] This exceeds the threshold required under CAFA.

---

[4] This total does not include any value for Plaintiff's claims for minimum wage, overtime, and wage statement violations, claims to which Plaintiff obviously attributes some value, but which the Court need not analyze since the claims discussed above surpass the jurisdictional threshold.

IV.

CAFA's amount-in-controversy requirement is met, and its citizenship requirement is not at issue.  Accordingly, the Court DENIES the motion to remand.

Date: February 5, 2024

_____
Stanley Blumenfeld, Jr.
United States District Judge